**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CAREFIRST OF MARYLAND, INC.,** | * | |
| ***Plaintiff,*** | * | |
| **v.** | * | **Civil No.: ABA-26-2391** |
| **AVRAHAM RAPPAPORT,** ***et al.*****,** | * | |
| ***Defendants*****.** | * | |

* * * * * * * * * * * * *

**AVRAHAM RAPPAPORT'S MEMORANDUM IN SUPPORT OF**
**HIS MOTION TO DISMISS AMENDED COMPLAINT**

Defendant Avraham Rappaport ("Avraham"), by and through his attorneys, respectfully submits this memorandum in support of his motion to dismiss the Amended Complaint filed by Plaintiff CareFirst of Maryland, Inc. ("CareFirst") on September 28, 2026, on the grounds that (1) each claim is barred by the applicable statute of limitations and, Plaintiff, therefore failed to state a claim upon which relief may be granted; and (2) Plaintiff failed to join all required parties under Federal Rule of Civil Procedure 19.[1]

## INTRODUCTION

Fourth Circuit and Maryland state law are consistent: "the statute of limitations begins to run 'when a plaintiff knows or should know of the injury that underlies his cause of action.'" *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 537 (4th Cir. 1997) (quoting *Pocahantas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987)); *see also Cain v. Midland Funding, LLC*, 475 Md. 4, 35 (2021) ("Under the discovery rule, a claim accrues when the plaintiff

---

[1] This Motion is timely filed based upon the Court's Order extending the time to file a responsive pleading until October 26, 2026. (Doc. 37).

knew or reasonably should have known of the wrong.") (internal quotation marks omitted). While the statute of limitations for civil RICO claims is four years, *see Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987), and the statute of limitations is three years for the Maryland state-law claims asserted here, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2026), the events giving rise to the allegations in the Amended Complaint were, or should have been, known to Plaintiff well before June 15, 2022.[2] Accordingly, Plaintiff's Amended Complaint should be dismissed. At a minimum, Plaintiff has pled that it knew about the alleged facts no later than "late 2022," (Doc. 22, ¶¶ 2, 149), therefore Counts III-VII[3] are time-barred by Maryland's three-year statute of limitations, and should be dismissed.

While acknowledging that a motion to dismiss for failure to join parties is an extraordinary remedy under Fourth Circuit precedent, *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000), CareFirst fundamentally has required the joinder of every subscriber by alleging that "CareFirst has identified at least 32,510 **claims for medical coverage** it has paid for those 355 **subscribers**, resulting in total fraudulent payments of $66,723,043.44." (Doc. 22, ¶ 158) (emphasis added). CareFirst does not, and cannot, allege that Rappaport received any portion of the over $60 million in subscriber benefits alleged as losses. Without the joinder of every subscriber alleged to have impermissibly received coverage, complete recovery is not possible in this case and it, therefore, must be dismissed.

---

[2] Rappaport concedes, as to this motion, that, under Federal Rule of Civil Procedure 15(c), the Amended Complaint relates back to the date of filing of the Complaint on June 15, 2026. Therefore, that date should control the statute of limitations analysis. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 468 (4th Cir. 2007) (en banc).

[3] In their Amended Complaint, Plaintiffs omit Count V and renumber their original Counts V and VI as Counts VI and VII, respectively. Rappaport will refer to the counts as they are numbered in the Amended Complaint to avoid confusion.

**FACTS**

To avoid unnecessarily belaboring any disagreement regarding the merits of the allegations and to solely focus on the issues presented in this motion—the expiration of the statute of limitations and the necessity for the joinder of parties—the below facts are highlighted for the Court's consideration. While all allegations drawn from the Amended Complaint are assumed as true for the purpose of evaluating this Motion, any facts not drawn directly from the Amended Complaint are supported by attached exhibits which are "'integral to the complaint and authentic,'" which the Court can consider without converting this to a motion for summary judgment under Fed. R. Civ. P. 56. *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).[4]

1. From as early as 2016, Avraham and CareFirst were parties to agreements governing the sale of CareFirst benefit plans by Avraham. (Doc. 22, ¶ 58).

2. As early as January 1, 2018, CareFirst was aware of up to 12 subscribers claiming to simultaneously reside at 6619 Park Heights Ave., Baltimore, MD 21215. (Doc. 22, ¶ 93d).

3. In 2021, CareFirst was aware that B.T. was claiming to reside simultaneously with at least two other subscribers at 3525 Taney Road, Baltimore, Maryland. (Doc. 22, ¶ 116).

4. Prior to 2022, CareFirst was aware of up to 23 subscribers claiming to simultaneously reside at 3915 Bancroft Road, Baltimore, Maryland 21215. (Doc. 22, ¶ 93a).

---

[4] The exhibits mentioned below are authentic business records of CareFirst which were produced by it in another proceeding. These records were received by counsel for Avraham in that action and, to the best of undersigned counsels' knowledge, have not been altered or modified.

5. Prior to 2022, CareFirst was aware of up to 75 subscribers claiming to simultaneously reside at the same ten side-by-side duplex houses located at the corner of Park Heights Ave. and Taney Ave. in Baltimore, Maryland. (Doc. 22, ¶ 93b).

6. Prior to 2022, CareFirst was aware of up to 10 subscribers claiming to simultaneously reside at 3907 W. Strathmore Ave., Baltimore, Maryland 21215. (Doc. 22, ¶ 93c).

7. In March 2022, CareFirst "began looking into the rise in care costs for the Individual <65 line of business with a particular focus on catastrophic claims." CareFirst Document, "Avraham Rappaport Case Summary," attached as **Exhibit A**.

8. From March 2022 through May 2022, "[t]he Enrollment team reviewed eligibility and demographic data and noted that each of the members had the same broker (Avraham Rappaport)." **Exhibit A**.

9. "By . . . the summer of 2022 . . . CareFirst had begun to investigate claims submitted by some of the Rappaports' clients . . ." (Doc. 22, ¶ 117).

10. When challenged by CareFirst, clients of Rappaport submitted "false documents to CareFirst as 'support' for their fraudulent residency claims." (Doc. 22, ¶ 7).

11. The clients of Rappaport were "ineligible, non-Maryland residents . . . obtaining CareFirst's generous coverage by fraud." (Doc. 22, ¶ 9).

12. During this same time period, "[d]ata queries of all members and their claims for policies sold by Avraham Rappaport were extracted . . . [and] [i]t was ***apparent*** that a pattern was occurring as there were dozens of members receiving care exclusively out-of-area." **Exhibit A** (emphasis added).

13. In June 2022, an "extensive review began." **Exhibit A**.

14. No later than July 1, 2022, CareFirst was contacting members directly regarding eligibility requirements and verification. *See, e.g.*, CareFirst Letter dated July 1, 2022, attached as **Exhibit B**.

15. "CareFirst began rescinding policies from the Rappaports' clients in July 2022." (Doc. 22, ¶ 77).

16. In response to an inquiry from CareFirst regarding their residence in July 2022, subscriber B.T. submitted a "fake lease." (Doc. 22, ¶¶ 118, 122, 125). This is just one example of "fraudulent communications" submitted by subscribers directly to CareFirst. (Doc. 22, ¶ 127).

17. By "late 2022, CareFirst first identified that the unusual claims were being submitted largely by policies submitted by certain brokers, namely the Rappaports." (Doc. 22, ¶ 149); *but see* **Ex. A** (From March 2022 through May 2022, "[t]he Enrollment team reviewed eligibility and demographic data and noted that each of the members had the same broker (Avraham Rappaport)."); (Doc. 22, ¶ 77) ("CareFirst began rescinding policies from the Rappaports' clients in July 2022.").

18. CareFirst paid over $66 million in claims by "out-of-state individuals under policies reserved for Maryland residents" while Rappaport received only commissions for the sale of policies, not the benefits collected by the policy beneficiaries. (Doc. 22, ¶ 13).

## STANDARD OF REVIEW

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if "accepting the allegations as true," it fails to "allow[] a recovery." *Waterford Citizens' Ass'n v. Reilly*, 970 F.2d 1287, 1290 (4th Cir. 1992). While a challenge to a claim under the statute of limitations is traditionally an affirmative defense, "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under

Rule 12(b)(6)." *Goodman*, 494 F.3d at 464; *see also Moseke v. Miller & Smith, Inc.,* 202 F. Supp. 2d 492, 501 (E.D. Va. 2002) ("A motion to dismiss based on the expiration of the statute of limitations is analyzed under Rule 12(b)(6)."); *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 175 (1997) ("If it is apparent from the face of the complaint that the action is barred by the statute of limitations, the complaint fails to state a claim upon which relief can be granted and the statute of limitations can be the grounds for a motion to dismiss."). Dismissal is, therefore, proper if the alleged facts would, if proven, nonetheless fail to afford relief to the plaintiff because the respective statute of limitations has expired.

With respect to the failure to join parties, while "'employed only sparingly,'" dismissal "is 'required' if the nonjoined party 'is both necessary and indispensable.'" *Gunvor SA v. Kayablian*, 948 F.3d 214, 219 (4th Cir. 2020) (quoting *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014)). While "a district court asks first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)," this inquiry in not formulaic and "must be made pragmatically, in the context of the substance of each case." *Gunvor SA*, 948 F.3d at 218-19 (citation and internal quotation marks omitted).

## ARGUMENT

### I. THE STATUTE OF LIMITATIONS FOR COUNTS I AND II EXPIRED BEFORE THE COMPLAINT WAS BROUGHT.

It is black letter law that the statute of limitations for bringing an action alleging a civil RICO violation is four years. *See Agency Holding Corp.*, 483 U.S. at 156. The statute of limitations begins to run "when a plaintiff knows or should know of the injury that underlies his cause of action." *Detrick*, 108 F.3d at 537 (internal quotation marks omitted). In crystallizing the concept of the "discovery accrual rule" guiding the RICO statute of limitations, the Supreme Court explained that "we have been at pains to explain that discovery of the injury, not discovery of the

other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000). This concept is illuminated in the Fourth Circuit's holding in *Detrick* where it refutes any implication "that the circuit intended the 'injury' to refer to both the actual injury as well as the plaintiff's discovery of the defendant's racketeering acts." *Detrick*, 108 F.3d at 540 ("The Detricks' injury occurred in April, 1990, when the Detricks abandoned their warehouse contract with Panalpina. The Detricks discovered the alleged fraud on March 11, 1991. Thereafter, the Detricks filed the instant suit on March 9, 1995. A straightforward application of the rule adopted in *Pocahontas* provides that the four-year statute of limitations began to run in April 1990, the date of the injury. Hence, the district court correctly concluded that the Trustees' claims, filed in 1995, were time-barred.").

The allegations here show that the injury at issue—financial losses based on the submission of applications for CareFirst policies based on false or fictitious information—was, or should have been, discovered by CareFirst prior to June 15, 2022. CareFirst sets forth in excruciating detail the number of CareFirst subscribers that simultaneously or near-simultaneously shared specific residential addresses—facts it was aware of prior to June 15, 2022. (Doc. 22, ¶¶ 93a, 93b, 93c, 93d). Additionally, CareFirst added an allegation to their Amended Complaint stating that "CareFirst began rescinding policies from the Rappaports' clients in July 2022." (Doc. 22, ¶ 77). If CareFirst is already rescinding policies sold by Rappaport in July 2022, it strains credulity to say CareFirst had not discovered, prior to June 15, 2022, any damage that would start the running of the statute of limitations. These facts alone are enough to put CareFirst on notice of the injury alleged in the Complaint and CareFirst possessed these facts for some time prior to June 15, 2022. A complete, or even more fulsome, understanding of the facts underlying the alleged injury is not required to start the clock on the statute of limitations, and, without being able to put an exact date

on CareFirst's initial notice of injury, its Amended Complaint clearly sets forth that it preceded June 15, 2022.

Further, while the Court can find that CareFirst possessed notice of the injury prior to June 15, 2022 solely based on the allegations in the Amended Complaint, Exhibits A and B provide context to buttress that finding. For example, the "Avraham Rappaport Case Summary" states that CareFirst began its inquiry into the billing practices from which it claims injury in March 2022, identifying that questionable subscriber claims "had the same broker (Avraham Rappaport)." Ex. A. CareFirst next states that it began an "extensive review" in June 2022 focused on Avraham. *Id.* These facts, contained in CareFirst internal documents, line up with the allegation in the Amended Complaint that CareFirst was rescinding policies sold by Rappaport in July 2022. (Doc. 22, ¶ 77). CareFirst was undisputedly aware of the alleged financial injury prior to June 15, 2022.

Notwithstanding an ongoing internal CareFirst investigation after June 15, 2022, the Fourth Circuit, in *Detrick*, explicitly rejects any argument that injury does not accrue prior to knowledge of facts underlying the cause of action. *Detrick*, 108 F.3d at 539-40 (finding that the economic harm was the sole injury that commenced the running of the statute of limitations); *see also Rotella*, 528 U.S. at 556-57 (explaining the proper application of the injury discovery rule utilizing a parallel between malpractice cases and RICO cases in the commencement of the statute of limitations and stating: "A RICO plaintiff's ability to investigate the cause of his injuries is no more impaired by his ignorance of the underlying RICO pattern than a malpractice plaintiff is thwarted by ignorance of the details of treatment decisions or of prevailing standards of medical practice."). Counts I and II should thus be dismissed under Rule 12(b)(6) because CareFirst cannot state a claim following the expiration of the statute of limitations.

## II. THE STATUTE OF LIMITATIONS FOR COUNTS III, IV, VI, AND VII EXPIRED BEFORE THE COMPLAINT WAS BROUGHT.

It is codified in Maryland that a "civil action at law shall be filed within three years from the date it accrues" with limited, non-applicable exceptions. Cts. & Jud. Proc. § 5-101; *see also Cain*, 475 Md. at 37-38. This statutory, three-year limitations period applies to actions under the contract and tort theories alleged in Counts III, IV, VI, and VII of the Amended Complaint. [5] *See Nationwide Mut. Ins. Co. v. Shilling*, 468 Md. 239, 260 (2020) (analyzing the three-year statute of limitations in a breach of contract matter); *Ver Brycke v. Ver Brycke*, 379 Md. 669, 698 (2004) (finding that unjust enrichment was a claim at law based on the sought remedy of restitution); *Moreland v. Aetna U.S. Healthcare, Inc.*, 152 Md. App. 288, 295 (2003) (stating that the three-year statute of limitations governed tort claims). The statute of limitations begins to run "when the plaintiff knew or reasonably should have known of the wrong." *Cain*, 475 Md. at 35 (internal quotation marks omitted); *see also Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 986 (D. Md. 2002) ("Knowledge of *facts*, however, not actual knowledge of their legal significance, starts the statute of limitations running.") (emphasis in original).

To survive the three-year statute of limitations for Counts III, IV, VI, and VII, CareFirst could not have known of the alleged injury prior to June 15, 2023. The face of the Amended Complaint could not be clearer with respect to the Maryland state-law based claims contained in Counts III, IV, VI, and VII—CareFirst was on notice of the alleged injury before June 15, 2023. While full development of the factual underpinnings is not required under the discovery rule to initiate the statute of limitations, CareFirst admits on the face of the Amended Complaint that it had by "late 2022, . . . identified that the unusual claims were being submitted largely by policies

[5] *See supra* note 3.

submitted by certain brokers, namely the Rappaports." (Doc. 22, ¶ 149). Further CareFirst admitted that as of July 2022, it was rescinding the policies of clients of Rappaport. (Doc. 22, ¶ 77). CareFirst would be hard-pressed to justify rescinding the policies of subscribers with no knowledge or suspicion of wrongdoing.

The court in *Doe v. Archdiocese of Washington* reached this exact issue and upheld the dismissal of a complaint based on the expiration of statute of limitations based on the allegations solely on the face of the complaint. *Doe*, 114 Md. App. at 190; *see also Litz v. Md. Dep't of Env't*, 434 Md. 623, 643-45 (2013) (affirming lower court holding that the permanent nuisance cause of action was barred by the statute of limitations based on the allegations contained on the face of the complaint). This Court should dismiss Counts III, IV, VI, and VII because they were not brought timely under the Maryland statute of limitations.

## III. CAREFIRST'S FAILURE TO JOIN ALL NECESSARY AND INDISPENSABLE PARTIES IN THIS LAWSUIT REQUIRES DISMISSAL.

CareFirst appears to be litigating two separate cases: (1) alleging that Rappaport and others collected commissions for the improper sale of CareFirst policies, but (2) seeking losses of over $60 million because of claims benefits received by subscribers. These are incongruous lines of litigation with the current parties to this action. Because CareFirst did not join the 355 subscribers that it alleges caused the over $60 million in losses that it is seeking, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).

CareFirst is explicit in its factual allegations that the subscribers submitted "falsified documents to CareFirst," and that the specific allegation regarding B.T. contained in the Amended Complaint is just one "illustrative example and in no way comprises the full scope" of the false communications submitted to CareFirst by subscribers. (Doc. 22, ¶¶ 7, 127). Armed with this information and whatever evidence it has to support it, CareFirst, in alleging a wide-ranging

conspiracy, omitted necessary and indispensable parties—the actual subscribers who reaped the benefits of the over $60 million in medical claims.

The first question in this analysis is, under Rule 19(a), "whether the nonjoined party is necessary." *Gunvor SA*, 948 F.3d at 218. A non-joined party is necessary if the "court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). And a Court "cannot accord complete relief among the existing parties where plaintiff . . . requests relief that is not within defendant's power to bestow." *Paul v. Blue Cross Blue Shield of N.C.*, 725 F. Supp. 3d 505, 512 (E.D.N.C. 2024) (alteration and internal quotation marks omitted). In addition to seeking to recapture money paid as claims benefits by way of alleged damages from the wrong parties, as discussed above, CareFirst also seeks injunctive relief from Rappaport that he has no power to give. CareFirst, in its Prayer for Relief,[6] seeks an injunction precluding "Defendants from engaging in further wrongful conduct against Plaintiff." Because CareFirst knows, and actually alleges in its Amended Complaint, that Rappaport is no longer licensed by the State of Maryland to sell health insurance policies, (Doc. 22, ¶ 18), it can only be assumed that the harm CareFirst seeks to stop is the submission of claims by subscribers. Rappaport cannot give that relief. Indeed, only the non-joined subscribers can give the sought relief. For that reason, the subscribers should be found to satisfy the first inquiry of whether they are necessary under Rule 19(a).

Once the CareFirst subscribers are found to be necessary under Rule 19(a), the Court will "consider, in equity and good conscience, the four factors set forth in Rule 19(b)" in a non-mechanical way to determine if the subscribers are indispensable as parties to this action. *Gunvor SA*, 948 F.3d at 221 (internal quotation marks omitted). Prior to reaching the four factors, as a

---

[6] Also contained in its prayer for relief, CareFirst seeks damages for Count V, which, as noted, does not exist.

precursor to that analysis, Fourth Circuit "'precedent supports the proposition that a contracting party is the paradigm of an indispensable party.'" *Id.* (quoting *Nat'l Union*, 210 F.3d at 252). Each CareFirst subscriber entered into a contract with Plaintiff CareFirst.

The first factor under Rule 19(b) evaluates "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." Fed. R. Civ. P. 19(b)(1). The court's analysis in *National Union* is particularly illuminating. The *National Union* court found that a signatory to an insurance contract, because they entered into the policy, would suffer "particularly strong" prejudice if not joined in the action. *Nat'l Union*, 210 F.3d at 252-53. Further, as discussed in the analysis of Rule 19(a) necessity, Rappaport would be significantly prejudiced by a judgment in the absence of the subscribers as parties here.

"The second factor to consider under Rule 19(b) is whether a court can tailor relief to lessen or avoid the prejudice to the absent person or to those already parties." *Id.* at 253. It strains credulity to find a way for the Court to appropriately tailor relief in this case given the relief requested by CareFirst. Should Rappaport be found liable, the Court would need to completely repudiate the money damages alleged by CareFirst to appropriately tailor relief to match the conduct of Rappaport. Further, with respect to the sought injunctive relief, Rappaport cannot perform on the relief sought and therefore the Court could not tailor any relief to avoid prejudice to Rappaport.

"The third factor asks 'whether a judgment rendered in the person's absence would be adequate.'" *Gunvor SA*, 948 F.3d at 222 (quoting Fed. R. Civ. P. 19(b)(3)). The purpose of this factor is to protect "'the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.'" *Id.* (quoting *Home Buyers Warranty Corp.*, 750 F.3d at 436). The court in *Gunvor SA* elucidated the exact analysis required in this case when it found that "not joining [the proposed joined party] here could lead to parallel or subsequent litigation or

indemnification actions, all of which could produce incomplete, inconsistent, and inefficient settlement of this dispute." *Id*.

The final Rule 19(b) factor is "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). Rappaport will concede that, due to the expiration of the statute of limitations as explained above, CareFirst will not find an adequate remedy in the Maryland state courts. However, CareFirst, through its contract enforcement provisions with each of its subscribers, can rescind, as it has admitted doing, (Doc. 22, ¶ 77), any policy it believes is being utilized for fraudulent claims, therefore providing for itself the injunctive relief sought from this Court. While the fourth Rule 19(b) factor may not weigh as heavily in favor of Rappaport as the first three, "[t]he 'analysis is not mechanical; rather it is conducted in light of the equities at the particular case at bar.'" *Gunvor SA*, 948 F.3d at 221 (quoting *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1287 (4th Cir. 1994)). Balancing the equities here, the Rule 19(b) factors militate in favor of finding that the joinder of the CareFirst subscribers—contract parties with CareFirst—is not only necessary under Rule 19(a), these parties are indispensable under Rule 19(b). Because the necessary and indispensable subscribers were not joined as parties, the Amended Complaint should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, because (1) each claim is barred by the applicable statute of limitations and, Plaintiff, therefore failed to state a claim upon which relief may be granted; and (2) Plaintiff failed to join all required parties under Federal Rule of Civil Procedure 19, this Court should dismiss each of Plaintiff's claims as to Avraham Rappaport with prejudice.

Dated: October 26, 2026

Respectfully submitted,

*/s/ William Sinclair*
Andrew C. White (# 08821)
awhite@silvermanthompson.com
Mark Edelson (# 29433)
medelson@silvermanthompson.com
William N. Sinclair (# 28833)
bsinclair@silvermanthompson.com
Gregory P. Bailey (# 23006)
gbailey@silvermanthompson.com
SILVERMAN THOMPSON SLUTKIN & WHITE, LLC
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Phone: (410) 385-2225

*Attorneys for Avraham Rappaport*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of October, 2026, I filed the foregoing Memorandum in Support using CM/ECF which will notify all counsel of record.

*/s/ Gregory P. Bailey*
Gregory P. Bailey